_____
Honorable August B. Landis
United States Bankruptcy Judge

Entered on Docket
February 13, 2024

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re: | ) Case No. 21-13893-ABL |
| | ) |
| MILLOLA HOLDINGS LLC, | ) Chapter 11 |
| | ) |
| Debtor in Possession. | ) DATE: April 5, 2023 |
| | ) TIME:  1:30 p.m. |
| | ) |

### ORDER CONFIRMING FIRST AMENDED PLAN OF REORGANIZATION OF MILLOLA HOLDINGS LLC

The First Amended Plan of Reorganization ("Plan"), filed by Millola Holdings LLC (the "Debtor") as ECF Document Number 69, and the Plan having been transmitted to creditors and parties in interest; and

It having been determined after hearing on notice that the requirements for confirmation set forth in 11 U.S.C. § 1129 ("Code Section 1129") have been satisfied, and there being no pending objections to confirmation;

IT IS ORDERED that:

The Second Amended Plan of Reorganization, attached hereto as Exhibit "A," and each of its provisions, apart from those provisions which might be modified by the present Confirmation Order, shall be and hereby is APPROVED and CONFIRMED on a consensual basis under 1191(a). The failure

to specifically include any particular provisions of the Plan in this Confirmation Order shall not diminish or impair the efficacy of such provisions, it being understood that it is the intent of the Court that the Plan be confirmed and approved in its entirety as well as each provision separately; and it is

Further ORDERED that:

The Debtor shall file post-confirmation quarterly reports in accordance with United States Trustee Guidelines; and it is

Further ORDERED that:

The Plan, and each of the provisions of the Plan, separately, shall be binding upon the Debtor, any entity acquiring or receiving property or a distribution under the Plan, and any holder of a claim against the Debtor, including but not limited to all governmental entities, with such and all claims being novated and re-treated under the Plan, whether or not the claim or interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan. Each provision of the Plan shall be interpreted in a manner that is consistent with the doctrine of severability and, as such, the illegality, unenforceability or default of one provision shall not render other provisions, or the Plan as a whole, illegal, unenforceable or in default; and it is

Further ORDERED that:

The Debtors, having fulfilled the requirements of Code Section 1129, are authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such action as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, whether or not specifically referred to in the Plan, without further order of

this Court, and any or all such documents shall be accepted by all of the appropriate filing offices and recorded in accordance with applicable state law and shall become effective in accordance with the terms and the provisions of state law. Any entity, admitting its claim as being unsecured, or being deemed or determined as having its claim as unsecured, shall perform all necessary tasks necessary and

sufficient to remove any liens or other encumbrances from property of the Debtor, or property of the bankruptcy estate; and it is

Further ORDERED that:

This Confirmation Order shall constitute all approval and consent required, if any, by the laws, rules or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan.

Respectfully submitted,

*/s/ David A. Riggi*
David A. Riggi, Esq.
Bar No. 4727
7900 W. Sahara Ave. Suite 100
Las Vegas, NV 89117
***Attorney for the Debtor in Possession***

## RULE 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

**____** The court has waived the requirement set forth in LR 9021(b)(1).

**____** No party appeared at the hearing or filed an objection to the motion.

**__X__** I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document]:


**Approved**/Disapproved


*/s/ Edward M. McDonald, Jr.*
Edward M. McDonald Jr.
Office of the United States Trustee
300 Las Vegas Blvd. South, Suite 4300
Las Vegas, Nevada 89101
edward.m.mcdonald@usdoj.gov
*Counsel for the United States Trustee,*
*Region 17*


**Approved**/Disapproved

*/s/ Timothy W. Nelson*
Timothy W. Nelson
Evans, Nelson & Company, CPAs
160 W. Huffaker Lane
Reno, NV 89511
Telephone:  (775) 825-6606
tnelson@encpas.com
*Subchapter V Trustee*


**____** I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.


###


4

# EXHIBIT "A"

# MILLOLA HOLDINGS LLC

## 21-13893-ABL

## UNITED STATES BANKRUPTCY COURT DISTRICT OF NEVADA

## FIRST AMENDED PLAN OF REORGANIZATION

## FOR SMALL BUSINESS UNDER CHAPTER 11

**MILLOLA HOLDINGS LLC's First Amended Plan of Reorganization, Dated 1-20- 2023**

**Background for This Case Filed Under Subchapter V**

**A. Description and History of the Debtor's Business**

The Debtor is a limited liability company owned by a mother and her son, who are equal members. The Debtor owns and manages two pieces of residential investment real estate (collectively, "Properties"). One of the Properties is commonly known as 8600 West Charleston Boulevard, Unit 2138, Las Vegas, Nevada ("Charleston Property"). The Charleston Property was purchased at an HOA sale. The Charleston Property's mortgage, which already encumbered the Charleston Property before the Debtor's purchase, is being restructured. The rent on the Charleston Property is $1040 a month.

The second of the Properties is commonly known as 3930 University Center Drive, Unit 2112, Las Vegas, Nevada ("University Property") is unencumbered. However, the University Property has had no rental income during the Debtor's entire ownership. That will change on February 1, 2023, when the University Property will have its first payment from its first tenant. Since before the filing of this case, and through the pendency of the case, the Debtor has had to do massive repairs to the University Property to make it habitable (no loans were sought or obtained by the Debtor for these repairs; no liens were created by these repairs – the monies were expended directly from the members in their individual capacities). The rent on the University Property is $1500 a month.

**B. Liquidation Analysis**

To confirm this First Amended Plan of Reorganization (the "Plan"), the Court must find that if a creditor does not accept the Plan, that creditor will receive at least as much under the Plan as its claim would receive in a chapter 7 liquidation. A hypothetical chapter 7 liquidation in this case would result in the creditor being paid completely, with interest – this is because the values of the Properties far exceed the amount of the claims. A Liquidation Analysis is attached as **Exhibit "A."**

**C. Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. The Plan Proponent's financial projections will show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in§ 1191(c)(2)). In all events, it is anticipated that contributions from the Debtor's members will not be needed except, perhaps, during any period of rent interruption. Rents should be more than adequate to fund this Plan. A Financial Projection is attached as **Exhibit "B."** If there is a consensual Plan (which is expected) then a discharge should be forthcoming within less than 30 days after the first Plan payment (which will also be the time of substantial consummation of a consensual Plan) and the final Plan payment is to be accomplished when the final mortgage payment to Class 2A is made or the final payment is

made to the Class 3 general unsecured claimant, whichever is later.  In any event, the Debtor will make all future plan payments and the Subchapter V Trustee will have no obligations or responsibilities for any distributions.

## Article 1: Summary

This Plan under chapter 11 of the Bankruptcy Code (the Code) proposes to pay creditors from infusion of capital, cash flow operations and future income.

This Plan provides for:  a class of a priority claims (of which there no members);

a class of a secured claim of Deutsche Bank as Trustee for Indymac Inda Mortgage;

a class of non-priority unsecured claims (of which there is a single member); and

a nominal class of equity security holders.

All creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. You should read this Plan carefully and discuss it with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)

## Article 2: Classification of Claims and Interests

### 2.01

#### Class 1

There are no claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), which are addressed below, at 3.02, as unclassified).

### 2.02

#### Class 2A

The secured claim of Deutsche Bank as Trustee for Indymac Inda Mortgage to the extent allowed as a secured claim under § 506 of the Code.

### 2.03

#### Class 3

Any non-priority unsecured claims allowed under § 502 of the Code.

### 2.04

#### Class 4

Equity interests of the Debtors – the Debtor can and does retain all rights that might be considered equity interests.

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

### 3.01 Unclassified Claims

Under section § 1123(a)(1), administrative expense claims, and priority tax claims are not to be placed in classes.

### 3.02 Administrative Expense Claims

Administrative expense claims are estimated in the total amount of $15,000 which are comprised of the fees and expenses of the Subchapter V Trustee and/or of counsel for the Debtor. Each holder of an administrative expense claim allowed under § 503 of the Code, will be paid in full on the no later than 60 days after the Effective Date of this Plan or after necessary approval of fees, whichever is later in time, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. At this time, there are no claims in this category other than fees and costs owed to the Subchapter V Trustee and counsel for the Debtor.

### 3.03 Priority tax claims

There are no priority tax claims.

### 3.04 Statutory fees

All fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date of the Plan.

## Article 4: Treatment of Claims and Interests Under the Plan

### 4.01 Claims and interests shall be treated as follows under the Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 - Priority claims excluding those in Article 3 | N/A | **No class member** |
| Class 2A – Secured claim of Deutsche Bank as Trustee for Indymac Inda Mortgage (proof of claim 2-1). | Yes | This secured creditor's claim is collateralized by 8600 West Charleston Blvd., Unit 2138, Las Vegas, Nevada. The treatment of this Class 2A Secured Claim shall be pursuant to all the terms and provisions set forth in the parties' Claim Stipulation, attached hereto as **Exhibit "C"** and **incorporated herein by this reference**, and on the Court's docket at **ECF. No. 50**. This secured creditor shall be tendered monthly payments, pursuant to that Stipulation, in the amount of $ 814.34 for 360 months to begin on April 1, 2022. Property taxes & insurance shall be maintained separately by the Debtor. |
| Class 3 – Non-priority unsecured creditor | Yes | Non-priority unsecured claims shall receive 100 percent payments in full. Commencing on the first day of the month after the Effective Date of the Plan, $500 a month shall be distributed pro rata to allowed unsecured claims for 35 months and, if there is a balance at the end of the 35 payments, a final 36th payment shall satisfy the balance owed to the claimant of this Class. |
| Class 4 - Equity security holders of the Debtor | N/A | The equity security holder, the Debtor's member, shall retain all current interests. |

3

## Article 5: Allowance and Disallowance of Claims

### 5.01 Disputed claim

A disputed claim is a claim that has not been allowed or disallowed [by a final non- appealable order], and as to which either:

(i)      a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(ii)      no proof of claim has been filed, and the Debtors has scheduled such claim as

          disputed, contingent, or unliquidated.

### 5.02 Delay of distribution on a disputed claim

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

### 5.03 Settlement of disputed claim

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## Article 6: Provisions for Executory Contracts and Unexpired Leases

### 6.01 Assumed executory contracts and unexpired leases

(a) At this time, the Debtor does not know of any executory contract or unexpired lease to which it is a party. Nevertheless, the provisions of this section are to be applicable should any executory contract or unexpired lease be discovered within 90 days after the date of the order confirming this Plan.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under this section (6.01(a) of this Plan), or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 120 days after the date of the order confirming this Plan.

## Article 7: Means for Implementation of the Plan

The means for implementation shall come from rents from the property and, as necessary, infusion of capital contributions from the Debtor's members.   The total rents from the Properties are $2540 a month. A Financial Projection, attached as **Exhibit "B,"** indicates the implementation of the Plan via the rents is easily feasible.

## Article 8: General Provisions

### 8.01 Definitions and Rules of Construction; Substantial Consummation

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

### 8.02 Effective date

The effective date of this Plan ("Effective Date") is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

### 8.03 Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 8.04 Binding effect

The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

### 8.05 Captions

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 8.06 Controlling effect

Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Nevada govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

### 8.07 Retention of Jurisdiction

The United States Bankruptcy Court for the District of Nevada shall retain, without limitation, full and complete jurisdiction over this Plan and this chapter 11 case.

## Article 9: Discharge

If the Debtors' Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i)        imposed by this Plan; or

(ii)       to the extent provided in § 1141(d)(6).

If the Debtors' Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first

5

3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

(i)　　on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii)　　excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.


**Article 10: Other Provisions**

(A) There shall be no pre-payment penalty for the Debtor paying a claim at any time before expiration of the term set forth in this Plan or in any Note terms supplementing this Plan.

(B) The occurrence of the Effective Date shall operate to disallow and expunge any claims of any creditor who received actual notice of the Chapter 11 Case and that: (a) were not listed on the Debtor's filed bankruptcy schedules and for which no proof of claim was filed on or prior to the Bar Date; (b) were listed on the Debtor's schedules as disputed, contingent or unliquidated, and for which no proof of claim was filed on or prior to the Bar Date; (c) are the subject of a proof of claim for a pre-petition claim that was filed after the Bar Date. Any creditor who failed to file a proof of claim on or before any Court imposed claims bar date, shall be barred from participating in any distribution under the Plan, and the Debtor shall have no further liability for such claim.

(C) Following the Effective Date, the Debtor may continue to employ counsel for necessary legal services. Counsel may be paid from the Debtor without further order of the Court.

(D) The Plan may be modified post-confirmation in accordance with §1193 of the Bankruptcy Code.

(E) The Subchapter V Trustee shall be entitled to reasonable compensation of fees for services rendered and reimbursement of actual and necessary expenses incurred through the Effective Date of the Plan, which shall constitute and administrative priority expense and shall be paid in accordance with Section 3.02 of this Plan.

(F) All secured claim holders shall release their liens or reconvey their deed of trust within 30-days of receiving their last payment made under the Plan.

(G) Certain aspects of a Consensual Confirmation under 11 U.S.C. § 1191(a). The Plan has been accepted by all voting classes and, therefore, Debtor seeks to confirm the Plan under 11 U.S.C. § 1191(a). If the Plan is confirmed under Section 1191(a), the provisions of 11 U.S.C. § 1183(c)(1) shall apply to the Plan and the Subchapter V Trustee shall be terminated upon Substantial Consummation of the Plan, subject to the Unites States trustee reappointing a trustee as needed for performance of duties under Sections 1183(b)(3)(C) and 1185(a) of the Code.

(H) Certain aspects of a Non-Consensual Confirmation under 11 U.S.C. § 1191(b). Notwithstanding the provisions of 11 U.S.C. § 1194(b), if the Plan is confirmed under 11 U.S.C. § 1191(b): (1) the Debtor will make all payments to creditors required under the Plan; and (2) the Subchapter V Trustee shall not be terminated pursuant to Section1183(c).

(I) Substantial Consummation. In accordance with 11 U.S.C. § 1102(2)(C), the Plan shall be deemed Substantially Consummated upon the commencement of distributions under the Plan. In the event the Plan is confirmed under 11 U.S.C. § 1191(a), Debtor shall file a notice of Substantial Consummation in accordance with 11 U.S.C. § 1183(c)(2).

Respectfully submitted,

*/s/ Milton Gay*

On behalf of, and member-manager of, the Debtor and Plan Proponent

*/s/ David A. Riggi, Esq.*

Attorney for the Debtor and Plan Proponent

// // // //                                                // // // //

7

# EXHIBIT A –
# LIQUDATION ANALYSIS OF
# MILLOLA HOLDINGS

The properties owned by the Debtor far exceed the combined claims against the estate. Specifically, as noted in documents on file with the court in this case at ECF No. 13, page 1 of 7, at which the Debtor asserts value of all property at $303,430 and all claims at the amount of $145,000. Even when total claims are based on the proofs of claims filed with this court, they are far less than the value of estate property. Only two claims were filed: (1) the sole member of Class 2A, Deutsche Bank National Trust Company (proof of claim 2-1) in the amount of $160,268.50; and (2) the sole member of Class 3, JPMorgan Chase Bank (proof of claim 1-1) in the amount of $16,724.28.

The liquidation value requires 100 percent payment to all allowed claims.

# EXHIBIT **B** – FINANCIAL PROJECTION OF MILLOLA HOLDINGS

**MONTHLY INCOME:**

CHARLESTON RENTAL . . . . . . . . . .  $1040.00

UNIVERSITY RENTAL . . . . . . . . . . .  $1500.00

**Total: $2540.00**

**MONTHLY EXPENSES:**

PROP. TAXES AND INSURANCE. . . . .$300.00

REPAIRS AND MAINTENANCE . . . . . $200.00

SECURED LOAN SERVICE . . . . . . . . $814.34

HOA FEES . . . . . . . . . . . . . . . . . . . . . $658.00

MISC ADMIN (LICENSING ETC). . . . .$ 67.00

**Total:  $2039.34**

DISPOSABLE INCOME FOR
UNSECURED CREDITORS      . . . . . .**$500.66**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

**ALDRIDGE PITE, LLP**
Eddie R. Jimenez (NV SBN 10376)
7220 South Cimarron Road, Suite 140
Las Vegas, NV 89113
Telephone: (858) 750-7600
Facsimile: (619) 590-1385
E-mail: ecfnvb@aldridgepite.com

**Mailing Address**:
4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, California 92177-0933

Attorneys for Secured Creditor:
Deutsche Bank National Trust Company as
Trustee for INDYMAC INDA MORTGAGE
LOAN TRUST 2005-AR1, MORTGAGE
PASS-THROUGH CERTIFICATES Series
2005-AR1

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>MILLOLA HOLDINGS LLC,<br><br>       Debtor and Debtor in<br>       Possession. | Case No. 21-13893-ABL<br><br>Chapter 11 (Sub V):<br><br>**STIPULATION RE: TREATMENT OF CLAIM OF CREDITOR'S CLAIM FOR DEBTOR'S SMALL BUSINESS SUB V CHAPTER 11 PLAN**<br><br>**Class 2A**<br><br>**<u>SUBJECT PROPERTY</u>:**<br>8600 West Charlston Blvd.,<br>Unit 1192, Las Vegas, NV 89117 |

      Secured Creditor, Deutsche Bank National Trust Company as Trustee for INDYMAC INDA MORTGAGE LOAN TRUST 2005-AR1, MORTGAGE PASS-THROUGH CERTIFICATES Series 2005-AR1; PHH Mortgage Corporation as servicer (collectively hereinafter "<u>Creditor</u>"), and Debtor, Millola Holdings LLC (hereinafter "<u>Debtor</u>"), by and through their respective counsel of record hereby enter into this Stipulation Re: Treatment of Creditor's Class 2A Claim for Debtor's Chapter 11 Plan ("<u>Stipulation</u>"):   The property which is the subject of this matter is commonly known as 8600 West Charlston Blvd., Unit 1192, Las Vegas, NV 89117 (hereinafter the "<u>Subject Property</u>"). /././

- 1 -

1  /././

2  ### I.  RECITALS

3  ***Creditor's Claim:***

4  On August 24, 2005, Ryan C. Shultz ("Borrower") executed a promissory note in the

5  principal sum of $139,920.00 (the "Note"), which was made payable to IndyMac Bank, FSB

6  ("Lender").  (*See,* Proof of Claim No: 2-1).

7  The Note is secured by a first position deed of trust (the "Deed of Trust") encumbering the

8  Property.  The Deed of Trust was duly recorded on August 31, 2005, in the Official Records of Clark

9  County, State of Nevada.  (*See,* Proof of Claim No: 2-1).  The Note and Deed of Trust may be

10  referred to collectively herein as the "Loan."

11  Subsequently, all of the Lender's beneficial interest in the Loan was transferred and/or

12  assigned to Creditor. (*See,* Proof of Claim No: 2-1).

13  On information and belief, Debtor acquired the Property at a Homeowners' Association Sale

14  subject to Creditor's Claim.

15  ***The Bankruptcy Proceedings:***

16  On August 6, 2021, Debtor filed the instant bankruptcy petition under Subchapter V of

17  Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the District of Nevada and

18  assigned Case No. 21-13893-ABL.

19  Creditor filed a Proof of Claim against the Debtor's estate in the amount of $160,268.50,

20  secured by the Property with $65,821.23 in pre-petition arrears.  (*See,* Proof of Claim No: 2-1).

21  On November 4, 2021, Debtor filed its Subchapter V Chapter 11 Plan of Reorganization

22  ("Plan").  *(See, Dkt. No.24)*.  Creditor's Claim is identified as the Class 2A Claim.   In essence, the

23  Plan provides that Creditor's Secured Claim shall be equal to its Proof of Claim, and will accrue

24  interest at a fixed 3% per annum over 30 years.   The Debtor shall be responsible for the timely

25  payment of property taxes and insurance.   (*Id*).

26  On December 17, 2021, the parties filed a Stipulation to Continue the Confirmation Hearing

27  and related deadlines ("Stipulation to Continue") as the parties worked to resolve the treatment of

28  Creditor's claim for the Plan.  (*See*, Dkt. No.39).

On December 22, 2021, the Court entered the Confirmation Hearing and related deadlines to February 23, 2022.  (*See*, Dkt. No.45).

**THE PARTIES STIPULATE AS FOLLOWS**:

1.     Creditor (its successors or assigns) shall have an allowed, fully secured claim of $165,537.06 to be amortized over 30 years at a fixed interest rate of 4.25% per annum (the "Secured Claim").

2.     <u>Contractual Payments of Principal and Interest</u>.   Debtor shall tender regular monthly principal and interest payments to Creditor (and/or its servicer) in the amount of $814.34 on the first day of each month for the Secured Claim commencing April 1, 2022 and continuing on the first day of each month thereafter until March 1, 2052 when all outstanding amounts owed on the Secured Claim, including any escrow payments and/or charges as required per the terms and provisions of this Stipulation and/or the Note and Deed of Trust, are to be paid in full.

3.     <u>Payment of Property Taxes, Insurance, and HOA Dues</u>.  Effectively immediately, Debtor is required to obtain and maintain real property insurance for the Subject Property and timely pay all property taxes and Homeowners' Association ("HOA") dues for the Subject Property.  Debtor shall provide Creditor's counsel with proof of such insurance within 5 business days of executing this Stipulation.   In the event Debtor fails to maintain insurance, timely pay property taxes and/or HOA dues as required hereunder, then Creditor (and/or its servicer) may, in its sole discretion obtain insurance for the Subject Property and/or pay property taxes and HOA dues for the Subject Property, which may become part of the Secured Claim thereafter, and thereafter require Debtor to tender monthly escrow payments to reimburse Creditor (and/or its servicer) for any and all insurance and/or property tax advances made by Creditor (and/or its servicer) for the Subject Property along with the regular contractual payments of principal and interest described in paragraph 2 above.

4.     <u>Pre-Confirmation Default</u>:  In the event of any default on any of the provisions of this Stipulation prior to confirmation of Debtor's Chapter 11 Plan, Creditor (and/or its servicer) shall provide written notice, via certified mail, to Debtor at the Subject Property and to Debtor's attorney of record, indicating the nature of default.  If Debtor fails to cure the default or payment default with certified funds after the passage of thirty (30) calendar days from the date said written notice is

placed in the mail as reflected on the certified receipt, then the Automatic Stay shall terminate, unless it has already been terminated by operation of law, and Creditor (and/or its servicer) may commence any and all action necessary to obtain complete possession of the Subject Property under the terms of the Loan and applicable state law, including but not limited to foreclosure thereof, without further notice, order, or proceeding of this Court.

5.     <u>Post-Confirmation Default</u>.  Upon confirmation of Debtor's Chapter 11 Plan, the Automatic Stay shall be deemed terminated as to the Debtor and estate, and the Creditor (and/or its servicer) will no longer have to comply with paragraph 4 above in the event of default.  Instead, Creditor (and/or its servicer) may provide Debtor notice of any default related to the Stipulation in accordance with the Loan, and applicable state law and/or proceed with all its remedies under the terms of the Loan and applicable state law, including but not limited to foreclosure of the Subject Property, without further notice, order, or proceeding of this Court.

6.     Any forbearance by Creditor (and/or its servicer) in exercising any right or remedy, including, without limitation, Creditor (and/or its servicer) accepting payments from third persons, entities or successors in interest to Debtor, or in amounts less than the amount due, including as provided for under this Stipulation, shall not be a waiver of or preclude the Creditor's (and/or servicer) exercise of any right or remedy, or act as a waiver of Creditor's right to proceed hereunder or under the Loan.

7.     Except as otherwise expressly provided for herein, all remaining terms of the Note and Deed of Trust, which are incorporated herein by this reference, shall govern the treatment of Creditor's Secured Claim.

8.     The Debtor has reviewed Creditor's Claim and has no Objection thereto, and the claim is not disputed.

9.     In the event the Debtor seeks to sell the Subject Property at anytime prior to confirming its Chapter 11 Plan, Creditor shall be entitled to credit bid at any such sale in an amount not less than the full unmodified, original outstanding balance owing under the terms of the Loan and/or exercise any of its rights pursuant to 11 U.S.C. §§ 363(b), (f) and (k) or 1129(b)(2)(A)(ii) as applicable, and shall be permitted to receive proceeds from the sale of the Subject Property in an

amount not less than the full unmodified, original outstanding balance owing under the terms of the Loan at said time.

10.     In the event the Debtor asserts that Creditor has failed to properly update its internal system to comply with the terms of this Stipulation within a reasonable period of time after an order is entered confirming the Debtor's Chapter 11 Plan of Reorganization, which shall be not less than ninety (90) days, the Debtor shall be required to provide written notice of the alleged lack of compliance to Creditor and Creditor's counsel of record, Aldridge Pite, LLP at 4375 Jutland Drive, Suite 200, San Diego, CA 92117, indicting the nature of the alleged lack of compliance. If Creditor fails to either remedy the alleged lack of compliance and/or provide an explanation refuting the Debtor's allegation after the passage of ninety (90) days from the date Creditor receives said written notice (the "Meet and Confer Period"), Debtor may proceed with filing the appropriate motion in bankruptcy court seeking Creditor's compliance.

11.     The treatment of Creditor's Class 2A Claim in Debtor's Plan shall be deemed to reflect all the terms and provisions herein, which are incorporated therein by this reference.  Further, Debtor shall be required to attach a copy of this Stipulation to any subsequent Chapter 11 Plan filed in this case as an exhibit and shall expressly incorporate the terms and provisions of this Stipulation.  In the event the Court does not require Debtor to file an amended chapter 11 plan subsequent to this stipulation, this Stipulation and Order thereon must be expressly incorporated into any Confirmation Order on Debtor's Plan by Docket Number.   In the event of a conflict between a provision of Debtor's Plan as to the treatment of Creditor's Secured Claim, and the Stipulation, the Stipulation shall control.  Further, the terms and provisions of this Stipulation may not be modified, altered, or changed by the Chapter 11 Plan, any subsequently filed amended or modified Chapter 11 Plan of Reorganization and/or confirmation order on the foregoing without the express written consent of the Creditor.

12.     In the event the Debtor's case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Creditor shall retain its lien in the full, unmodified amount due under the Loan since the commencement of these proceedings, less any payments received to such date.

/././

13.    In exchange for the forgoing, and provided Debtor's Plan reflects the terms and provisions herein, Creditor shall provide a ballot voting in favor of the Debtor's Chapter 11 Plan of Reorganization for the Secured Claim.

Dated:   April 27, 2022                **ALDRIDGE PITE, LLP**

By:   /s/ *Eddie R. Jimenez*
         EDDIE R. JIMENEZ (SBN 10376)
         Attorneys for Deutsche Bank National Trust
         Company as Trustee for INDYMAC INDA
         MORTGAGE LOAN TRUST 2005-AR1,
         MORTGAGE PASS-THROUGH CERTIFICATES
         Series 2005-AR1; PHH Mortgage Corporation as
         servicer

Dated:   April 27, 2022                **RIGGI LAW FIRM**

By:   /s/ *David A. Riggi*
         DAVID A RIGGI (SBN 4727)
         Attorney for Debtor, Millola Holdings, LLC

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF NEVADA – LAS VEGAS DIVISION

3    CASE NO.

4    CERTIFICATE OF SERVICE

5    I, Lauren Timby, am employed by Aldridge Pite, LLP, and I am over the age of eighteen (18)

6    years, and not a party to the within action.  My business address is 4375 Jutland Drive, Suite 200;

7    P.O. Box 17933, San Diego, CA 92177-0933.  I served the attached by placing a true copy thereof in

8    an envelope addressed to:

9    JUDGE
Judge August B. Landis
10    U.S. Bankruptcy Court
District of Nevada
11    Foley Federal Building
300 Las Vegas Boulevard South
12    Las Vegas, NV 89101

13    DEBTOR
Millola Holdings, LLC
14

15    U.S. TRUSTEE
U.S. Trustee - LV – 11
300 Las Vegas Blvd. S., Ste. 4300
16    Las Vegas, NV 89101

17    SUB V TRUSTEE
Timothy W. Nelson
18    Evans, Nelson & Company, CPAs
160 W Huffaker Lane
19    Reno, NV 89511

20

21    which envelope was then sealed and postage fully prepaid thereon, and thereafter on April 27, 2022

22    United States Mail at San Diego, California. There is regular delivery service between the place of

23    mailing and the place so addressed by the United States Mail.

24    I certify under penalty of perjury that the foregoing is true and correct.

25    Dated: April 27, 2022            /s/Lauren Timby

26    LAUREN TIMBY

27

28

- 7 -